## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SYLVIA PEREZ, Individually and as Special Administrator of the Estate of Armando Perez, | ) ) ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 3:16-CV-00842-NJR-DGW |
| | ) | |
| AIR AND LIQUID SYSTEMS CORPORATION, Individually and as Successor to BUFFALO PUMPS, INC., et al., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter comes before the Court on several motions to dismiss. On August 1, 2016, Defendant General Electric Company ("GE") filed a motion to dismiss for lack of personal jurisdiction (Doc. 11). On August 5, 2016, Defendants Air & Liquid Systems and Warren Pumps filed nearly identical motions to dismiss for failure to state a claim (Docs. 29, 30). Defendant John Crane joined in the motion filed by Air & Liquid Systems on August 22, 2016 (Doc. 38). The motions are fully briefed and ripe for review.

### BACKGROUND

Plaintiff Sylvia Perez, Special Administrator of the Estate of Decedent Armando Perez, brought this action against numerous defendants for injuries her husband allegedly sustained from asbestos exposure while serving in the United States Navy from approximately 1944 to 1946 (Doc. 1-1, p. 5). The decedent trained in San Diego, California, and was stationed in Honolulu, Hawaii (*Id.*). He primarily served aboard the

USS Maryland but also worked at various ports when the USS Maryland was being repaired (*Id.*). Perez claims that the decedent was exposed to asbestos fibers from various products he worked with that were sold by Defendants during his time in the Navy (*Id.*). On May 4, 2015, the decedent was diagnosed with mesothelioma, which ultimately led to his death (*Id.*, p. 7-8).

On June 1, 2016, Perez filed a complaint in the Circuit Court of Madison County, Illinois, alleging negligence as to manufacturers of asbestos products (Count I), willful and wanton misconduct (Count II), and loss of consortium (Count III). On July 25, 2016, Defendant Crane Co. removed the case to this Court on the basis of federal officer jurisdiction under 28 U.S.C. § 1442. The Court recently found that federal subject matter jurisdiction is proper and denied Plaintiff's motion to remand the case back to state court (*see* Doc. 76).

ANALYSIS

## I.      Motions to Dismiss Count III

The Court first reviews the motions to dismiss Count III, Perez's loss of consortium claim, filed by Defendants Air & Liquid Systems, Warren Pumps, and John Crane (Docs. 29, 30, 38). Defendants claim that Count III should be dismissed because a claim under the Illinois Wrongful Death Act renders a separate claim for loss of consortium superfluous. They assert that Illinois courts consistently and explicitly state that a widow "is precluded from bringing her loss of consortium count as an additional remedy when she also filed a count arising from the Wrongful Death Act." *See Kubian v. Alexian Bros. Medical Ctr.*, 272 Ill. App. 3d 246, 255 (2d Dist. 1995) (citing *Knierim v. Izzo,*

Page **2** of **21**

174 N.E.2d 157 (Ill. 1961)). As a result, they argue, Count III for loss of consortium should be dismissed.

In response, Perez asserts that she brought claims under both the Survival Act and the Wrongful Death Act. Under the Wrongful Death Act, she can recover for pecuniary losses from her husband's death, arising after his death, including loss of consortium. Under the Survival Act, she can recover for the pain and mental suffering and expenses her deceased husband sustained between the time of his injury and death. She argues that her claim for loss of consortium is derivative of her Survival Act claim; that is, she seeks damages for injuries to the marital relationship that occurred between the time her husband was injured and his death. Perez notes that while she did not expressly invoke the Survival Act in her Complaint, her allegations are sufficient to state a claim under both the Wrongful Death Act and the Survival Act.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is meant to "test the sufficiency of the complaint, not to decide the merits" of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). Dismissal of an action under this motion is warranted if the plaintiff can prove no set of facts in support of its claims that would entitle it to relief. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). In evaluating a motion to dismiss, the Court must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011); *Thompson v. Ill. Dep't. of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002).

Under the Wrongful Death Act, a personal representative of the decedent may bring an action for his or her own losses resulting from the decedent's death, "arising *after* his death, *i.e.*, for his lost wages and other such monetary losses." *Eisenmann v. Cantor Bros.*, 567 F. Supp. 1347, 1350 (N.D. Ill. 1983) (citing *Murphy v. Martin Oil Co.*, 308 N.E.2d 583 (Ill. 1974)). "The purpose of the Wrongful Death Act is to compensate the surviving spouse and next of kin for the pecuniary losses sustained due to the decedent's death." *Elliott v. Willis*, 442 N.E.2d 163, 168 (Ill. 1982). "Loss of consortium is one of the pecuniary injuries compensable in a wrongful death action . . . and, therefore, the common law action for loss of consortium is not available as an additional remedy to the surviving spouse." *Dunleavy v. Keene Corp.*, No. 86-C-2759, 1987 WL 4403, at *1 (N.D. Ill. Feb. 11, 1987).

The facts of *Dunleavy v. Keene Corp.* are strikingly similar to those presented here. The plaintiff in that case brought an action against numerous defendants alleging personal injury, wrongful death, and loss of consortium as a result of her husband's exposure to the defendants' asbestos products. *Id.* The defendants moved to dismiss the loss of consortium claim because it was superfluous to recovery sought under the Wrongful Death Act. *Id.* The district court agreed that, to the extent the plaintiff sought loss of consortium damages arising *after* her husband's death, she did not state a claim. *Id.* In addition to the wrongful death claim, however, the plaintiff, as administrator of her husband's estate, also brought claims arising under the Survival Act for injuries sustained during the interval between the decedent's injury and his death. The court held that "[t]o the extent that the loss of consortium count seeks damages for injury to

the marriage during the interval between the decedent's injury and his death, it is derivative of the surviving personal injury claims and is not part of the wrongful death claim." *Id.* Thus, the court denied the defendants' motion to dismiss the plaintiff's loss of consortium claim. *Id.*

As in *Dunleavy*, Perez has brought a claim under the Illinois Survival Act for personal injuries her husband suffered prior to his death. The Complaint alleges that the decedent experienced great physical pain and mental anguish as a result of the inhalation, ingestion, and absorption of asbestos fibers (Doc. 1-1, p. 8). Perez also alleges her husband was compelled to expend and become liable for large sums of monies for hospital, medical, and other health care services necessary for the treatment of his asbestos-induced disease and to alleviate the pain, suffering, mental anguish, and physical disability caused by his injury. *See Eisenmann v. Cantor Bros.*, 567 F. Supp. 1347, 1351 (N.D. Ill. 1983) (the Survival Act allows recovery for such injuries as conscious pain and mental suffering, expenses, and lost wages the decedent sustained during the interval between his injury and his death). Thus, the Complaint may be construed as bringing a claim under the Survival Act.

To the extent that Perez's loss of consortium claim seeks damages for injury to the marriage sustained after her husband's injury but before his death, "it is derivative of the surviving personal injury claims and is not part of the wrongful death claim." *Dunleavy*, 1987 WL 4403, at *1. Any recovery under the Wrongful Death Act for injuries to the marriage sustained *after* her husband's death would not compensate for injuries sustained *before* his death. Thus, Perez may bring her claim for loss of consortium for

any injury to the marriage suffered between the time of her husband's injury and his death. Accordingly, Defendants' motions to dismiss Count III are denied.

## II.  GE's Motion to Dismiss for Lack of Personal Jurisdiction

The Court next reviews GE's Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 11). GE argues that because it is a New York corporation with its principal place of business in Massachusetts,[1] Perez cannot establish general personal jurisdiction. Furthermore, because Perez has not alleged any injuries that directly arise out of or relate to GE's activity in Illinois, there can be no specific personal jurisdiction. Thus, GE is entitled to be dismissed for lack of personal jurisdiction. In response, Perez asserts that GE consented to jurisdiction by registering to do business in Illinois and appointing an agent for service of process (Doc. 46, p. 1). Furthermore, GE is subject to both general and specific jurisdiction (*Id.*). To her response, Perez attached an affidavit from her attorney and six exhibits (Doc. 46-1). GE moved to strike that affidavit and three of the exhibits (Doc. 55). GE also filed a reply in support of its motion to dismiss (Doc. 56).

Once a defendant moves to dismiss based on the lack of personal jurisdiction, the burden falls on the plaintiff to demonstrate that jurisdiction exists. *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015). When a court determines personal jurisdiction based on written submissions without holding an evidentiary hearing, the plaintiff must establish a *prima facie* case of personal jurisdiction to survive dismissal. *Id.*; *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002); *see also Snap-On Inc. v. Robert Bosch, LLC*, No. 09 C 6914, 2013 WL 5423844, at *4 (N.D. Ill. Sept. 26, 2013). In

---

[1] GE's principal place of business moved from Connecticut to Massachusetts on September 1, 2016 (Doc. 56-1).

deciding whether the plaintiff has met the *prima facie* standard, a court is not limited to the pleadings and may consider affidavits and other outside materials. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003); *Leibovitch v. Islamic Republic of Iran*, No. 08 C 1939, 2016 WL 2977273, at *4 (N.D. Ill. May 19, 2016). The plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Id.* (quoting *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983)).

Personal jurisdiction is proper where it comports with both state law and federal constitutional principles of due process. *See uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). The Illinois long-arm statute provides that an Illinois court may exercise jurisdiction on any basis "now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). The Seventh Circuit Court of Appeals has suggested that there is no operative difference between Illinois and federal due process limits on the exercise of personal jurisdiction. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002) (citing *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997)); *see also Rollins v. Ellwood*, 565 N.E.2d 1302, 1316 (Ill. 1990) (construing the due process guarantee in the Illinois Constitution to mean that "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois"). Thus, the exercise of personal jurisdiction must comport with the due process guarantees of the Fourteenth Amendment. *Id.*

Personal jurisdiction is proper if the defendant has sufficient minimum contacts with the forum state such that the defendant could "reasonably anticipate being haled into court there," and the maintenance of the suit "does not offend traditional notions of fair play and substantial justice." *Kipp*, 783 F.3d at 697 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Courts recognize two types of personal jurisdiction: general and specific." *Id.* (citing *Daimler AG v. Bauman*, 134 S.Ct. 746, 751 (2014)).

General jurisdiction, or "all-purpose" jurisdiction, allows a court to hear any and all claims against foreign (sister-state or foreign-country) corporations when their "affiliations with the State [in which suit is brought] are so 'continuous and systematic' as to render them essentially at home in the forum State." *Daimler*, 134 S.Ct. at 754 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011)). Determining whether a corporation is "at home" in a particular state "calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide" because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Id.* at 762 n. 20. Indeed, the Supreme Court has identified only two places where a corporation is "at home": the state of the corporation's principal place of business and the state of its incorporation. *Kipp*, 783 F.3d at 698 (citing *Daimler*, 134 S.Ct. at 760). A "substantial, continuous, and systematic course of business" is no longer sufficient "to support the demand that the corporation be amenable to suits unrelated to that activity.'" *Id.*; *Daimler*, 134 S.Ct. at 757 (quoting *Int'l Shoe Co.*, 326 U.S. at 318).

"Specific" or "case-linked" jurisdiction requires an affiliation between the forum

and the underlying controversy—*i.e.*, "an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 131 S.Ct. at 2851. Specific jurisdiction arises where an out-of-state "defendant has 'purposefully directed' his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984), and the litigation results from alleged injuries that 'arise out of or relate to those activities' *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984*)." Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472–73 (1985). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quotation omitted).

### A.     General Jurisdiction

GE claims this Court cannot assert general personal jurisdiction over it because it is incorporated in New York, its principal place of business is in Massachusetts, and there are no facts to support a determination that GE is "at home" in Illinois. In response, Perez argues that GE has conducted business in Illinois since 1897, employs more than 4,300 employees in Illinois, and has leased more than 500,000 square feet of property in the state. Perez also claims that GE has litigated nearly 300 cases in federal court over the past 10 years, and apparently GE has not moved to dismiss for lack of personal jurisdiction in any of those cases. In reply, GE establishes that it is a global corporation that does business in 180 countries, employs approximately 333,000 people worldwide (125,000 in the United States), has 206 manufacturing plants located in 40 states (and hundreds more in 39 other countries), and has revenues of $52.3 billion in

the United States and $64.1 billion abroad. While GE admits it does business in Illinois, when compared with its worldwide presence, its modest Illinois activities do not make it "at home" in the state.

The Court agrees that it cannot exercise general personal jurisdiction over GE. GE is not incorporated in Illinois, nor is its principal place of business in Illinois. While GE does business in Illinois and employs people in the state, the Court must view that activity in the larger context of GE's business in its entirety. *See Daimler*, 134 S.Ct. at 762, n.20 (a court must appraise a corporation's activities "in their entirety, nationwide and worldwide" because "[a] corporation that operates in many places can scarcely be deemed at home in all of them"). Given the scope of GE's global presence, as well as its activity in other states, GE can "scarcely be deemed at home" in Illinois. *See id.* at 761 (finding the suggestion that general jurisdiction may be exercised in every state in which a corporation engages in a substantial, continuous, and systematic course of business "unacceptably grasping").

Furthermore, while GE may have been named as a party in hundreds of federal court cases over the past 10 years, it is worth noting that *Daimler*, which "raised the bar" on the requirements for general jurisdiction,[2] was decided less than three years ago, and GE has moved to dismiss for lack of personal jurisdiction in at least two cases in this district court alone since that opinion was issued. *See Rozumek v. Air and Liquid Systems, Inc.*, No 15-CV-441-SMY (S.D. Ill. July 1, 2015); *Begin v. Air and Liquid Systems, Inc.*, No 15-CV-830-SMY (S.D. Ill. Jan. 19, 2016). In both of those cases, GE's motion was granted.

---

[2] In *Kipp*, 783 F.3d at 698, the Seventh Circuit discussed the Supreme Court's "clarification" of general jurisdiction in recent years and its emphasis that general jurisdiction "should not lightly be found."

*See id.* The Court refuses to comment on the basis for jurisdiction in any other federal case involving GE when the facts of those cases are not before the Court.

Although GE has a presence in Illinois, the Court cannot say GE is "at home" in the state given its status as a global corporation. Thus, pursuant to the standard set forth by the Supreme Court in *Goodyear* and *Daimler*, this Court lacks general personal jurisdiction over GE.

### B.      Specific Jurisdiction

GE also claims there is no basis for specific jurisdiction over it in this case because Perez has not alleged any injuries that directly arise out of or relate to GE's activity in Illinois. GE points to Perez's allegations that the decedent was exposed to asbestos while serving in the Navy in California and Hawaii.

In response, Perez cites a case from California state court where the court found that specific jurisdiction existed since the resident and nonresident plaintiffs' claims were based on the same defective product (Plavix) and misleading marketing and promotion, which caused injuries in and outside the state. *See Bristol-Myers Squibb Co. v. Superior Court*, 377 P.3d 874 (Cal. 2016). Applying that rule in this case, Perez argues, specific jurisdiction exists because "Illinois residents' claims and nonresident plaintiffs' claims, including Plaintiff's claims here, are based on the same defective asbestos-containing products, which caused injuries both in and out of Illinois."

What Perez fails to acknowledge is that the Plavix case was a multi-plaintiff case with 83 California plaintiffs and several hundred non-California plaintiffs. The court recognized that specific jurisdiction existed over the California plaintiffs considering

that those Plaintiffs were injured by misleading marketing and promotion of the drug in California and by ingesting the drug in California, *i.e.*, the litigation arose from the defendant's activity in the state. *Id.* at 888. As for the nonresident plaintiffs, the court found the nonresident plaintiffs' claims bore a substantial connection to the defendant's contacts in California because the defendant had allegedly engaged in a nationwide course of distribution that included the same misleading marketing and promotion as was found in California. *Id.* Thus, the court found the nonresident plaintiffs' claims bore a substantial connection to the defendant's contacts in California. *Id.*

Perez's analogy to this non-binding, factually distinct case simply fails. This is not a multi-plaintiff case where some plaintiffs were injured in Illinois and others were not. Perez alleges that the decedent was exposed to asbestos in California and Hawaii while serving in the Navy during World War II. Perez has not alleged that the decedent's injuries arose out of or relate in any way to GE's activities in Illinois. Thus, there is no basis for specific jurisdiction.

### C.     "Consent" Jurisdiction

Perez further argues that GE consented to jurisdiction in Illinois when it registered to do business in Illinois and designated an agent for service of process, pursuant to Illinois law. Perez contends that consent by registration is an independent basis for jurisdiction that does not require a minimum contacts analysis.

The Seventh Circuit Court of Appeals has yet to determine whether registering to do business and maintaining an agent for service of process, as all 50 states require in

order to do business in the forum,[3] constitutes "consent" to jurisdiction such that a minimum contacts analysis need not be performed. Without delving into the issue of consent, however, the Seventh Circuit has held that registering to do business, as a "necessary precursor to engaging in business activities in the forum state . . . cannot satisfy—standing alone—the demands of due process." *Wilson v. Humphreys (Cayman) Ltd.*, 916 F.2d 1239, 1245 (7th Cir. 1990). In *Wilson*, the plaintiffs argued that Indiana's registration act was sufficient to support general jurisdiction. *Id.* The Court of Appeals stated that "[s]uch an interpretation of the Indiana registration statute would render it constitutionally suspect and, accordingly, we decline to give it such a reading." *Id.*

Indeed, many district courts in this Circuit have held that registering to do business or maintaining a registered agent is not enough to confer general jurisdiction over a foreign corporation. *See Leibovitch v. Islamic Republic of Iran*, No. 08 C 1939, 2016 WL 2977273, at *7-9 (N.D. Ill. May 19, 2016) (rejecting argument that general jurisdiction exists because the Illinois registration statute requires foreign corporations to appoint a registered agent for service of process); *Dimitrov v. Nissan N. Am., Inc.*, No. 15 C 06332, 2015 WL 9304490, at *4–5 (N.D. Ill. Dec. 22, 2015) (applying *Daimler* and holding that the court did not have general jurisdiction over foreign corporation simply because it was registered to do business in Illinois and conducted a small portion of its operations there); *U.S. Bank Nat'l Ass'n v. Bank of Am., N.A.*, No. 1:14–CV–01492–TWP, 2015 WL 5971126, at *6 (S.D. Ind. Oct. 14, 2015) (holding that "[m]erely registering to do business in Indiana . . . and also appointing an agent for purposes of service of process,

---

[3] *See* Kevin D. Benish, *Pennoyer's Ghost: Consent, Registration Statutes, and General Jurisdiction After Daimler Ag v. Bauman*, 90 N.Y.U. L. Rev. 1609 (2015).

does not establish personal jurisdiction over a corporation"); *Shrum v. Big Lots Stores, Inc.*, No. 3:14-cv-03135-CSB-DGB, 2014 WL 6888446, at *2, *7 (C.D. Ill. Dec. 8, 2014) ("[Defendant's] maintenance of an agent for the service of process does not rise to the level of 'continuous and systematic' contacts needed for the court to exercise general jurisdiction."); *Sullivan v. Sony Music Entm't*, No. 14CV731, 2014 WL 5473142, at *3 (N.D. Ill. Oct. 29, 2014) (implying that registration to do business and appointment of an agent are insufficient for general jurisdiction without discussing a consent-by-registration theory); *ACUITY v. Roadtec, Inc.*, No. 13-CV-6529, 2013 WL 6632631, at *5 (N.D. Ill. Dec. 16, 2013) ("Although such a registration indicates that [the defendant] seeks the benefits and protections of Illinois' laws, an Illinois license or registration does not automatically confer general personal jurisdiction."). Illinois courts have similarly held that nothing in the Illinois Code of Civil Procedure "supports asserting *in personam* jurisdiction over a corporate defendant simply because the plaintiff served summons upon the defendant's Illinois registered agent." *Alderson v. Southern Co.*, 321 Ill.App.3d 832, 853 (2001).

Were Perez merely arguing that registering to do business in Illinois confers general jurisdiction, the analysis would end here, as the Seventh Circuit has plainly held that registration alone is not enough to satisfy due process. Instead, however, she argues that consent jurisdiction is an independent basis for jurisdiction that does not require a due process analysis. To support her argument, Perez principally relies on pre-*Daimler* case law, including *Consumer Program Administrators, Inc. v. K.B. Parrish & Co., L.L.P.*, where the Northern District of Illinois relied on the Seventh Circuit's opinion in *Employers Ins. of Wausau v. Banco De Seguros Del Estado*. *Consumer Program*

*Administrators, Inc. v. K.B. Parrish & Co., L.L.P.*, No. 09 C 3731, 2009 WL 4788681, at *3 (N.D. Ill. Dec. 9, 2009). In *Wausau*, the Seventh Circuit held that "by agreeing to designate an agent for service of process" a foreign company "can waive th[e] requirement of minimum contacts" and, therefore, the right to dispute personal jurisdiction. *Employers Ins. of Wausau v. Banco De Seguros Del Estado*, 199 F.3d 937, 943 (7th Cir. 1999).

In *Wausau*, the Seventh Circuit found waiver within the context of a contract between the parties that included a "Service of Suit" clause. *Wausau*, 199 F.3d at 943. Thus, "the defendant in *Wausau* had contractually waived its right to object to the exercise of personal jurisdiction." *R.R. Donnelley & Sons Co. v. Jet Messenger Servs., Inc.*, No. 03 C 7823, 2004 WL 1375402, at *4 (N.D. Ill. May 25, 2004); *see also RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1280 (7th Cir. 1997) ("personal jurisdiction is waivable and . . . parties can, through forum selection clauses and the like, easily contract around any rule we promulgate"). The Seventh Circuit has cautioned that "[i]n the absence of such contractual arrangements, however, due process requires that potential defendants have some measure of control and warning regarding where they may be haled to court . . . ." *RAR, Inc.*, 107 F.3d at 1280. Because there was no contract between GE and the decedent whereby GE waived its right to object to the exercise of personal jurisdiction, Perez's reliance on these cases is misplaced.

Perez also cites to the Eighth Circuit's opinion in *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199 (8th Cir. 1990), another pre-*Daimler* case where the court found that the defendant consented to jurisdiction by registering an agent for service of

process. In *Knowlton*, the Eighth Circuit analyzed a Minnesota registration statute, which simply stated that "[a] foreign corporation shall be subject to service of process . . . [b]y service on its registered agent . . . ." *Id.* The court found it significant that there were "no words of limitation to indicate that this type of service is limited to claims arising out of activities within the state." *Id.* The court concluded that the "appointment of an agent for service of process under § 303.10 gives consent to the jurisdiction of Minnesota courts for any cause of action, whether or not arising out of activities within the state." *Id.* at 1200. "Such consent is a valid basis of personal jurisdiction, and resort to minimum-contacts or due-process analysis to justify the jurisdiction is unnecessary." *Id.*

In response, GE cites to cases that have analyzed the issue post-*Daimler*, including *Keeley v. Pfizer, Inc.*, No. 4:15CV00583 ERW, 2015 WL 3999488, at *4 (E.D. Mo. July 1, 2015). In *Keeley*, a Missouri district court distinguished the Missouri registration statute from the Minnesota statue at issue in *Knowlton* and also discussed *Daimler*'s holding that merely doing business in a state is not enough to establish general jurisdiction. *Id.* The court ultimately concluded that "[a] defendant's consent to jurisdiction must satisfy the standards of due process and finding a defendant consents to jurisdiction by registering to do business in a state or maintaining a registered agent does not." *Id.*

GE also points to a recent opinion from the Supreme Court of Delaware, *Genuine Parts Co. v. Cepec*, 137 A.3d 123 (Del. 2016), which held that, after *Daimler*, Delaware's registration statutes "must be read as a requirement that a foreign corporation must

appoint a registered agent to accept service of process, but not as a broad consent to personal jurisdiction in any cause of action, however unrelated to the foreign corporation's activities in Delaware." *Id.* at 127. In that case, defendant Genuine Parts was a Georgia corporation with its principal place of business in Atlanta. The plaintiff alleged that he was exposed to asbestos for the three years that he worked for Genuine Parts in Jacksonville, Florida. *Id.* at 128. Genuine Parts moved to dismiss the claims against it for lack of general and specific personal jurisdiction. *Id.* In response, the plaintiff argued that Genuine Parts had consented to Delaware's general jurisdiction by registering to do business in the state and appointing an in-state agent for service of process.

The court analyzed the parties' arguments in light of *Goodyear* and *Daimler*, in which the U.S. Supreme Court "made clear that it is inconsistent with principles of due process for a corporation to be subject to general jurisdiction in every place it does business." *Id.* at 137. The court also reviewed the relevant Delaware registration statutes, noting that nothing in the statutes explicitly provides that registering to do business and appointing a registered agent waives any objection to personal jurisdiction for causes of action not related to the corporation's conduct in Delaware. *Id.* at 142. Rather, in light of *Daimler*, the court found that Delaware's registration statutes can be given a sensible reading by construing them as requiring foreign corporations to allow service of process to be made upon them in *proper* cases, but not as consent to general jurisdiction. *Id.*

The Second Circuit has also analyzed this issue post-*Daimler* with regard to

Connecticut's registration statutes. In *Brown v. Lockheed Martin Corp.*, 814 F.3d 619 (2d Cir. 2016), the plaintiff sought damages for injuries suffered by her father as a result of asbestos exposure sustained while working as an Air Force mechanic in locations around the United States, but not in Connecticut. *Id.* at 622. Lockheed, a global aerospace company, is both incorporated and maintains its principal place of business in Maryland. *Id.* It is registered to do business in Connecticut and has a registered agent for service, in compliance with Connecticut law. *Id.* Between 2008 and 2012, it leased space in four locations in Connecticut, and employed between approximately 30 and 70 workers in the state.[4] *Id.* The plaintiff argued that Lockheed consented to general jurisdiction when it registered to do business in the state and appointed an agent to receive service of process. *Id.* In response, Lockheed argued that, although it may have consented to the exercise of *specific* jurisdiction by registering to do business, it did not consent to the exercise of *general* jurisdiction. *Id.* at 622. Further, even if consent could be found, the exercise of general jurisdiction over it would offend due process, given its relatively few Connecticut contacts. *Id.* at 623.

The Second Circuit agreed with Lockheed. It analyzed Connecticut's long-arm statute, which includes a section on "Service of process on foreign corporations" and states, in relevant part: "The registered agent of a foreign corporation authorized to transact business in this state is the corporation's agent for service of process, notice or demand **required or permitted by law** to be served on the foreign corporation." *Id.* (citing Conn. Gen. Stat. § 33–929(a) (emphasis added)). The court noted that "[t]he

---

[4] The court held this was not enough to find that Lockheed was "at home" in Connecticut such that it could exercise general jurisdiction over it. *Id.* at 628-30.

inclusion of this phrase ('permitted by law') and the omission of any specific reference to 'general jurisdiction,' to our reading, differentiates Connecticut's registration statute from others that have been definitively construed to convey a foreign corporation's consent to general jurisdiction." *Id.* at 637 (referring to a Pennsylvania statute that plainly advises the registrant that enrolling in the state as a foreign corporation and transacting business will vest the local courts with general jurisdiction over the corporation).

The Second Circuit also distinguished older case law that held registering to do business was enough to confer jurisdiction, noting that this approach has "yielded to the doctrinal refinement reflected in *Goodyear* and *Daimler* and the [Supreme] Court's 21st century approach to general and specific jurisdiction in light of expectations created by the continuing expansion of interstate and global business." *Id.* at 639. The court continued:

> If mere registration and the accompanying appointment of an in-state agent—without an express consent to general jurisdiction—nonetheless sufficed to confer general jurisdiction by implicit consent, every corporation would be subject to general jurisdiction in every state in which it registered, and *Daimler's* ruling would be robbed of meaning by a back-door thief. . . . In *Daimler*, the Court rejected the idea that a corporation was subject to general jurisdiction in every state in which it conducted substantial business. Brown's interpretation of the Connecticut statute could justify the exercise of general jurisdiction over a corporation in a state in which the corporation had done no business at *all*, so long as it had registered.

*Id.* at 640. Given these concerns and the absence of a clear legislative statement indicating registration by a business equals consent to jurisdiction, the Second Circuit declined to find that Lockheed had submitted to the general jurisdiction of Connecticut

courts. *Id.* at 641.

Here, Perez admits the Illinois registration statutes adhered to by GE, including 805 ILCS 5/5.05 (requiring corporation to maintain a registered agent in Illinois) and 5/5.25 (permitting service on corporation by serving its registered agent or Secretary of State), make no reference to jurisdiction. Instead, she claims they are substantially similar to the Minnesota statutes analyzed by the Eighth Circuit in *Knowlton*. Of particular relevance, 805 ILCS 5/5.25, "Service of process on domestic or foreign corporation" states:

> (a) Any process, notice, or demand **required or permitted by law** to be served upon a domestic corporation or a foreign corporation having authority to transact business in this State may be served . . . upon the registered agent appointed by the corporation . . . .

805 ILCS 5/5.25 (emphasis added).

Contrary to Perez's argument, the Court finds the language of Illinois' registration statutes more akin to the Connecticut statutes analyzed by the Second Circuit in *Brown* and the Delaware statutes analyzed in *Genuine Parts*. Nothing in the statutes expressly advises a foreign corporation that registration to do business constitutes consent to the exercise of general jurisdiction. Given the inclusion of limiting language ("permitted by law") and the lack of any reference to jurisdiction, the Court cannot say that Illinois' registration statutes require a foreign corporation to consent to the general jurisdiction of Illinois courts. Thus, GE did not consent to jurisdiction by registering to do business and appointing an agent for service of process, as required by Illinois law to do business in the state.

CONCLUSION

For these reasons, the Court **GRANTS** Defendant General Electric Company's Motion to Dismiss for Lack of Jurisdiction (Doc. 11) and **DISMISSES** Plaintiff's claims against GE without prejudice. GE's Motion to Strike the Declaration of Jack D. McInnes (Doc. 55), which was attached as an exhibit to Plaintiff's Response to the Motion to Dismiss for Lack of Personal Jurisdiction (Doc. 46-1), is **DENIED as moot**. Defendants' motions to dismiss Count III (Docs. 29, 30, 38) are **DENIED**.

**IT IS SO ORDERED.**

**DATED:   December 2, 2016**

_s/ Nancy J. Rosenstengel_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**